UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ORLANDO JONES, <br><br> Plaintiff, <br><br> v. <br><br> STEMLINE THERAPEUTICS, INC., IVAN BERGSTEIN, RON BENTSUR, DARREN CLINE, ALAN FORMAN, DANIEL HUME, MARK SARD, and KENNETH ZUERBLIS, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Orlando Jones ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Stemline Therapeutics, Inc. ("Stemline" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and to enjoin the expiration of a tender offer by Mercury Merger Sub, Inc. ("Merger Sub") (the "Offer"), a wholly-owned subsidiary of Berlin-Chemie AG ("Parent"), a subsidiary of A. Menarini - Industrie Farmaceutiche Riunite - S.r.l. ("Menarini Group").

2. On May 4, 2020, Stemline announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Menarini Group will acquire all outstanding shares of Stemline for (i) $11.50 per share in cash, plus (ii) one contingent value right per share (the "Proposed Transaction"). Pursuant to the Merger Agreement, Merger Sub commenced the Offer on May 12, 2020. The Offer is scheduled to expire at one minute after 11:59 p.m., Eastern Time on June 9, 2020.

3. On May 12, 2020, in order to convince Stemline's public stockholders to tender their shares in the Offer, defendants filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "14D-9") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction. The failure to adequately disclose such material information renders the 14D-9 false and misleading.

4. For these reasons, and as set forth in detail herein, Plaintiff alleges that defendants violated Sections 14(d), 14(e), and 20(a) of the Exchange Act as Stemline's stockholders need suck information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Moreover, Stemline is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.   Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Stemline.

9.   Defendant Stemline is a Delaware corporation and maintains its principal executive offices at 750 Lexington Avenue, Eleventh Floor, New York, New York 10022.  Stemline's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "STML."

10.  Defendant Ivan Bergstein is, and has been at all relevant times, the Company's Founder, Chief Executive Officer ("CEO"), President, and a director of the Company.

11.  Defendant Ron Bentsur is, and has been at all relevant times, a director of the Company.

12.  Defendant Darren Cline is, and has been at all relevant times, a director of the Company.

13.  Defendant Alan Forman is, and has been at all relevant times, a director of the Company.

14.  Defendant Daniel Hume is, and has been at all relevant times, a director of the Company.

15. Defendant Mark Sard is, and has been at all relevant times, a director of the Company

16. Defendant Kenneth Zuerblis is, and has been at all relevant times, a director of the Company

17. Defendants referenced in paragraphs 10 to 16 are collectively referred to herein as the "Board" or the "Individual Defendants."

18. Relevant non-party Menarini Group is a leading international pharmaceutical company with a presence in over 100 countries, including a direct presence in over 70 countries.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

19. Stemline is a commercial-stage biopharmaceutical company focused on discovering, acquiring, developing and commercializing oncology therapeutics. The Company's drug ELZONRIS (tagraxofusp-erzs) was approved by the U.S. Food and Drug Administration ("FDA") and is commercially available in the U.S., for the treatment of adult and pediatric patients, two years and older, with blastic plasmacytoid dendritic cell neoplasm ("BPDCN"). ELZONRIS is the first treatment approved for BPDCN and the first approved CD123-directed therapy. Stemline is also assessing ELZONRIS as both single agent and in combination, in a variety of other indications including Phase 1 and 2 clinical trials in chronic myelomonocytic leukemia ("CMML"), myelofibrosis ("MF"), multiple myeloma ("MM"), and acute myeloid leukemia ("AML"), with additional trials planned including a CD123+ all-comers trial. Additionally, Stemline is advancing a pipeline of additional novel therapeutic candidates, including felezonexor (SL-801), an oral small molecule XPO-1 inhibitor currently in an ongoing Phase 1 trial of patients with advanced solid tumors, and SL-1001, an oral small molecule RET (rearranged during transfection) kinase inhibitor currently in investigational new drug ("IND") directed studies

4

intended for patients with a variety of genetically-defined malignancies.

20.     On May 4, 2020, Stemline and Menarini Group issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> FLORENCE, Italy and NEW YORK, May 04, 2020 -- Menarini Group, a privately held Italian pharmaceutical and diagnostics company, and Stemline Therapeutics Inc., a commercial-stage biopharmaceutical company focused on the development and commercialization of novel oncology therapeutics, (Nasdaq: STML) today announced a definitive agreement under which Menarini Group will acquire Stemline in a transaction valued up to $677 million.
>
> Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 in cash and one non-tradeable Contingent Value Right (CVR) that will entitle each holder to an additional $1.00 in cash per share upon completion of the first sale of ELZONRIS in any EU5 country after European Commission approval. Stemline launched ELZONRIS for the treatment of blastic plasmacytoid dendritic cell neoplasm (BPDCN) in adult and pediatric patients, two years or older, following the approval by the United States Food and Drug Administration in December 2018. ELZONRIS is a novel targeted therapy directed to the interleukin-3 (IL-3) receptor-α (CD123).
>
> With the support of Menarini's infrastructure, Stemline will continue its efforts to develop additional applications of ELZONRIS to serve the unmet needs of patients suffering from difficult to treat diseases and cancers. Following its strong U.S. launch of ELZONRIS, Stemline will benefit from Menarini's experience in bringing products to markets in Europe and emerging markets as it prepares for a successful international launch upon receipt of regulatory approval in ex-U.S. territories.
>
> Elcin Barker Ergun, CEO of Menarini Group, commented, "Stemline is an excellent fit for Menarini, enabling us to expand our presence in the U.S. with an established biopharmaceutical company focused on developing oncology therapeutics. Through this acquisition, we will continue to strengthen our portfolio and pipeline of oncology assets and deliver novel therapies around the world. We look forward to uniting together with the Stemline team to advance our shared mission of serving patients."
>
> Ivan Bergstein, M.D., Chairman, CEO and Founder of Stemline, said, "Joining Menarini represents a unique opportunity for Stemline to advance the commercialization of ELZONRIS across the globe and to accelerate the development of our pipeline of oncology assets. We have transitioned Stemline over the last several years into an established commercial-stage operation with a

novel treatment, a growing pipeline and a strong foundation. We are excited to be combining with a like-minded organization in Menarini, in a transaction that will deliver immediate and significant cash value to our shareholders, while also allowing our shareholders to participate in the future upside of ELZONRIS's European launch. We look forward to working closely together on our unified goal of helping and delivering hope to patients worldwide."

**Transaction Terms**

Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 per share in cash, along with one non-tradeable Contingent Value Right (CVR).

Under the terms of the non-tradeable CVR, Stemline shareholders will be paid an additional $1.00 per share upon completion of the first sale for use or consumption by the general public of ELZONRIS in BPDCN in any one of the following countries: United Kingdom, France, Spain, Germany, or Italy after receiving approval by the European Commission of a Marketing Authorization Application (MAA), through the centralized procedure, on or before December 31, 2021. There can be no assurance such approval or commercialization will occur or that any contingent payment will be made.

Menarini will acquire any shares of Stemline not tendered into the tender offer through a second-step merger for the same per share consideration as will be payable in the tender offer. The merger will be effected as soon as practicable after the closing of the tender offer.

The transaction has been unanimously approved by the Boards of Directors of both companies. Stemline's Board of Directors recommends to shareholders of Stemline that they tender their shares into the tender offer. The transaction is expected to close in the second quarter of 2020, subject to customary closing conditions, including the tender of more than 50% of all shares of Stemline outstanding at the expiration of the offer and receipt of Hart-Scott-Rodino clearance. The terms and conditions of the tender offer will be described in the tender offer documents, which will be filed with the U.S. Securities and Exchange Commission.

Menarini expects to fund the acquisition through existing cash resources.

**The 14D-9 Misleads Stemline Stockholders by Omitting Material Information**

27.     On May 12, 2020, defendants filed the materially misleading and incomplete 14D-9 with the SEC.  Designed to convince the Company's stockholders to tender their shares in the

Offer, the 14D-9 is rendered misleading by the omission of critical information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by PJT Partners ("PJT") and BofA Securities ("BofA"); and (ii) potential conflicts of interest faced by PJT and Company insiders.

*Material Omissions Concerning PJT's and BofA's Financial Analyses*

28. The 14D-9 describes PJT's and BofA's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of PJT's and BofA's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Stemline's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on PJT's and BofA's fairness opinions in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

29. With respect to PJT's *Selected Precedent Merger Analysis*, the 14D-9 fails to disclose the individual multiples and financial metrics for each of the transactions analyzed by PJT.

30. With respect to PJT's *Discounted Cash Flow Analysis* ("*DCF*"), the 14D-9 fails to disclose: (i) the individual inputs and assumptions underlying the discount rate range of 12% to 14%; (ii) the implied fully diluted shares based on shares, options and RSUs outstanding as of April 30, 2020, as provided by Company management; and (iii) with respect to Stemline's terminal value, whether PJT accounted for the terminal value of Stemline in its *DCF* and (a) if unaccounted for, why, or (b) if accounted for, how the terminal value was calculated and the quantification thereof.

31. With respect to PJT's analysis of research analysts' price targets, the individual price targets observed and the sources thereof.

32. With respect to BofA's *DCF*, the 14D-9 fails to disclose: (i) the individual inputs and assumptions underlying the discount rate range of 9.0% to 12.0%; (ii) Stemline's estimated cash, per Stemline management; and (iii) whether BofA accounted for the terminal value of Stemline in its *DCF* and (a) if unaccounted for, why, or (b) if accounted for, how the terminal value was calculated and the quantification thereof.

33. With respect to BofA's premiums paid analysis, the transactions and individual premiums observed.

34. With respect to BofA's analysis of equity research analyst price targets, the individual price targets observed and the sources thereof.

35. The omission of this information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following section of the 14D-9: "Opinions of Stemline's Financial Advisors."

*Material Omissions Concerning PJT's and Company Insiders' Potential Conflicts of Interest*

36. The 14D-9 also fails to disclose material information concerning the potential conflicts of interest faced by PJT.

37. For example, the 14D-9 sets forth:

PJT Partners is acting as financial advisor to Stemline in connection with the Transactions. As compensation for its services in connection with the Transactions, PJT Partners is entitled to receive from Stemline (i) $1.0 million, which became payable upon the delivery of PJT Partners' opinion to the Stemline Board, (ii) additional compensation upon the closing of the Transactions which is based upon a formula and was estimated to be approximately $8.3 million as of May 4, 2020, and (iii) additional compensation upon payment of the Milestone Payment, if any, which is based upon a formula and was estimated to be approximately $800,000 as of May 4, 2020, resulting in total fees of approximately $10.1 million. Stemline has also agreed to reimburse PJT Partners for out-of-pocket expenses and

> to indemnify PJT Partners for certain liabilities arising out of the performance of such services (including the rendering of PJT Partners' opinion).

14D-9 at 41. The 14D-9 fails, however, to disclose the details of the formulas that will determine the amount of PJT's additional compensation it expects to receive upon closing of the Proposed Transaction and upon payment of the milestone payment.

38. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

39. The 14D-9 also fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

40. For example, in the May 4, 2020 press release announcing the Proposed Transaction, Elcin Barker Ergun, CEO of Menarini Group, stated, "We look forward to uniting together with the Stemline team to advance our shared mission of serving patients." Additionally, the 14D-9 sets forth:

> It is possible that Continuing Employees, including the executive officers, will enter into new compensation arrangements with Parent or its affiliates. Such arrangements may include agreements regarding future terms of employment, the right to receive equity or equity-based awards of Parent or retention awards. As of the date of this Schedule 14D-9, no compensation arrangements between such persons and Parent and/or its affiliates have been established, other than as described herein.

*Id.* at 11.

41. The 14D-9, however, fails to disclose the details of all employment and retention-related discussions and negotiations that occurred between Menarini Group and Stemline executive officers and directors, including who participated in all such communications, when they occurred and their content. The 14D-9 further fails to disclose whether any of Menarini Group's proposals or indications of interest mentioned management retention.

42. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Stemline's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43. The omission of this information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following sections of the 14D-9: "Opinion of Stemline's Financial Advisors," "Arrangements Between Stemline and its Executive Officers, Directors and Affiliates," and "Background of the Offer and the Merger."

44. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9

45. Plaintiff repeats all previous allegations as if set forth in full.

46. Defendants have caused the 14D-9 to be issued with the intention of soliciting Stemline stockholders to tender their shares in the Offer.

47. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

48. The 14D-9 violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the 14D-9 false and/or misleading.

49.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the 14D-9, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the 14D-9, rendering certain portions of the 14D-9 materially incomplete and therefore misleading.

50.     The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the other stockholders of Stemline, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Offer.  Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **COUNT II**

### **Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     Defendants violated Section 14(e) of the Exchange Act by issuing the 14D-9 in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Offer.

53.     Defendants knew that Plaintiff would rely upon their statements in the 14D-9 in determining whether to tender his shares pursuant to the Offer or seek appraisal.

54. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

### COUNT III

#### Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

55. Plaintiff repeats all previous allegations as if set forth in full.

56. The Individual Defendants acted as controlling persons of Stemline within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Stemline and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They

were, thus, directly involved in the making of this document.

59. In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The 14D-9 purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

60. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Stemline, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a 14D-9 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 29, 2020

                                                *s/William B. Federman*
                                                **FEDERMAN & SHERWOOD**
                                                William B. Federman (WF9124)
                                                10205 North Pennsylvania Avenue
                                                Oklahoma City, OK 73120
                                                Tel: (405) 235-1560
                                                Fax: (405) 239-2112
                                                -and-
                                                212 W. Spring Valley Road
                                                Richardson, Texas 75081

                                                *Attorneys for Plaintiff*